PETER A. TILYOU, Appellant, *v.* PATRICK REYNOLDS, Respondent.

The plaintiff held certain lands in the town of Gravesend under a lease executed to him by its commissioners of common lands for a term of ten years from May 1, 1873. On January 27, 1879, said commissioners by an indorsement under their hands and seals extended said lease for a further term of ten years. Plaintiff took possession of the whole of the premises on the execution of the original lease and remained in possession until February 27, 1883, when he demised a portion of said premises to defendant for a term of ten years. The lease recited that defendant understood and agreed that plaintiff only demised and granted " such right, title and interest in and to the right of occupancy of said lands, and only for such term and time as the first part has under the lease executed to him by the commissioners of common lands * * * and the renewal of said lease." Defendant paid one year's rent in advance. In an action to recover rent for the second year, defendant set up as a defense that the extension of plaintiff's lease was void, being in excess of the powers of the commissioners, and having been executed more than a year prior to the expiration of the then existing lease, and denied all liability to pay the rent demanded, and asked for an affimative judg-

ment requiring plaintiff to repay him so much of the rent as he had already paid under his lease. *Held,* that the defendant could not avail himself of the defect in plaintiff's title, that by accepting his lease defendant recognized the title as it then existed, in substance agreeing to accept it as a good title and a good foundation for the term bargained for, and there having been no eviction, no disclaimer or acquiescence in another title or claim by any other person that a superior title was to be enforced or insisted upon, he could not repudiate the contract or raise an issue on the title.

*Lamson* v. *Clarkson* (113 Mass. 348) distinguished.

Where a party enters and remains in possession as lessee of another, and the right of the lessor is in no way altered, the lessee is estopped from denying that relation, or that the legal estate and reversion are in the lessor.

*It seems,* that to avoid the danger of being compelled to make a double payment, the defendant might have caused the parties in interest to interplead.

(Argued February 10, 1888: decided February 28, 1888.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order dated October 31, 1885, which affirmed a judgment in favor of defendant entered upon a decision of the court on a trial without a jury.

The nature of the action and the facts are sufficiently stated in the opinion.

*George P. Avery* for appellant. A defense of failure of title in the plaintiff in this action for rent cannot avail. (*Whiting* v. *Edmunds,* 94 N. Y. 314; *Woodruff* v. *Erie R. Co.,* 93 id. 314; *Prevot* v. *Lawrence,* 51 id. 222; *Vernam* v. *Smith,* 15 id. 328; *Delancy* v. *Ganong,* 9 id. 1; *Ingraham* v. *Baldwin,* id. 45; *Sharp* v. *Kelly,* 5 Den. 431; *Kenada* v. *Gardner,* 3 Barb. 591; *Bigelow* v. *Furman,* 28 id. 645; *Hall* v. *Butler,* 10 Ad. & El. 203; *Doe* v. *Wiggins,* 4 id. [N. S.] 367; Sloane's Landl. and Ten. 81; Taylor's Landl. and Ten., § 629, note 4.) This case is no exception to the rule that a tenant cannot dispute his landlord's title. (*Hoag* v. *Hoag,* 35 N. Y. 469; *Vernam* v. *Smith,* 15 id. 328.) Estoppel is reciprocal; if a landlord is estopped a tenant is, and *vice versa.* (*Welland Canal* v. *Hathaway,* 8 Wend. 480; Taylor's Landl. and Ten. 97.) The judgment was erroneous, its effect

being to change a tenant into a trespasser. (Sloan's Landl. and Ten. 5; *Whiting* v. *Edmunds*, 94 N. Y. 314; *Whalen* v. *White*, 25 id. 465; *Giles* v. *Comstock*, 4 id. 270; *Evertson* v. *Sawyer*, 2 Wend. 507; *Ball* v. *Westwood*, 2 Camp. 11; *Kenada* v. *Gardner*, 3 Barb. 591.) For the defense to have availed, the defendant should have surrendered or have offered to surrender. (*Lamson* v. *Clarkson*, 113 Mass. 328; *Vernam* v. *Smith*, 15 N. Y. 331.) The tenant having covenanted to surrender the premises at the expiration of the term, must perform that covenant before he can dispute the title. (Sloane's Landl. and Ten. 81; *Kenada* v. *Gardner*, 3 Barb. 591; *Balls* v. *Westwood*, 2 Camp. 12; *Trevot* v. *Lawrence*, 51 N. Y. 228.)

*William Sullivan* for respondent. The lease from the town of Gravesend to the appellant having expired on May 1, 1883, and the renewal thereof being null and void, the estate or interest which the appellant had had in the premises on the date of the lease to the respondent ceased and determined at and upon such expiration. (*Tilyou* v. *Town of Gravesend*, 104 N. Y. 356.) If the lessor has, when he executes and delivers the lease, an interest in the premises so that an estate or interest passes from him to the lessee, the lease takes effect out of estate or interest, and not by estoppel, and the lessee is not estopped from showing that the interest which the lessor had at the time of the demise has determined before the alleged cause of action arose. (Co. Litt. 45 *a.* [Thomas ed.] vol. 2, 432; *Treport's case*, 6 Coke, 14 *a.* 15 *b.*; 2 Saunders, pt. 2. [4th Lond. ed.] 418 *note*; *Hicks* v. *Downing*, 1 Ld. Raymond 99; *Doe dem.*; *Jackson* v. *Ramsbotham*, 3 M. & S. 516; *England* v. *Slade*, 4 Term, 682; *Burne* v. *Richardson*, 4 Taunt, 720; *Langford* v. *Selmes*, 3 K. & J. 220; *Mountjoy* v. *Collier*, 72 Eng. Com. Law Rep. 629; *Cuthbertson* v. *Irving*, 4 H. & N. 741; *Lamson* v. *Clarkson*, 18 Am. Rep. 498; 113 Mass. 348.) The lease does not create an estoppel, either against lessor or lessee, where it discloses the title of the former. (*Cuthbertson* v. *Irving*, 4 H. & N. 741.)

DANFORTH, J.   This action is for rent alleged to be due from the defendant, an under-lessee, to the plaintiff, whose title as landlord was derived from the town of Gravesend, through a lease executed to him by its commissioners of common lands.   The original lease by its terms ended on the 1st of May, 1883, but on the 27th of January, 1879, the commissioners, by an indorsement under their hands and seals, extended the same for the term of ten years.

The plaintiff at the execution of the original lease took possession of the whole of the demised premises and continued in possession thereof until the 27th day of February, 1883, when by indenture of that date, executed by himself, and also by the defendant, he demised a portion of the premises for the term of ten years thereafter, at the annual rent of $150, which the defendant agreed to pay the plaintiff each year in advance.   He paid the first year's rent at the execution of the lease, went into possession of the premises and has had peaceable and undisturbed possession ever since, without let or hindrance from any quarter.   The rent claimed in this action is for the year beginning February 27, 1884. The lease from the plaintiff recited that it was "understood and agreed on the part of the party of the second part (defendant), that the party of the first part (plaintiff)," only demised and granted "such right, title and interest in and to the right of occupancy of said lands, and only for such term and time as the first part has under the lease executed to him by the commissioners of common lands, dated January 28, 1873, and the renewal of said lease, dated January 27, 1879."

The defendant, by answer, alleged that the plaintiff's leasehold, right and title to the premises ceased on the 1st day of May, 1883 ; that when he paid the first year's rent in advance he supposed the plaintiff's interest had been renewed and had ten years to run from said first of May, whereas the renewal, as the defendant alleges, was invalid, and he therefore not only denies his liability to pay the rent demanded, but asks an affirmative judgment requiring the plaintiff to repay to him

so much of the rent as purported to accrue after the 1st of May, 1883, to the 27th of February, 1884. This claim is put upon the ground that the extension, on the 27th of January, 1879, was void, because, in excess of the powers of the commissioners it was executed more than a year prior to the expiration of the then existing lease. It was so held in *Tilyou* v. *Town of Gravesend* (104 N. Y. 356). The material question is whether this defect in the plaintiff's title is available as a defense to this action. It is obvious that the extent and nature of that title was exhibited to the defendant when he took upon himself the relation of tenant, and that he entered upon the premises and has since enjoyed the use bargained for without interruption. Under these circumstances it would seem but just and reasonable that having had the consideration of his promise, he should be precluded from refusing to perform it. By the terms of his own lease he had not only constructive, but direct notice of the provisions of the plaintiff's lease, an opportunity to ascertain the powers of the commissioners who granted it, and neither concealment nor fraud is alleged against the plaintiff. It has been laid down as a rule that a purchaser must be wise in time; that a lessee is a purchaser within the rule and is equally bound to look into the facts connected with the subject of the lease, as a purchaser is to look into the matters connected with his purchase. (*Cosser* v. *Collinge*, 3 My. & K. 283 ; *Besley* v. *Besley*, L. R., 9 Ch. Div. 109.) Moreover he is within the general rule that a tenant may not dispute his landlord's title, for, as it is said, he is estopped from changing by his own act the character and effect of his tenure. It is conceded by the learned counsel for the defendant that if the plaintiff had no interest in the premises when the lease was executed and delivered, and it had been silent as to the title of the lessor, the lessee would have been estopped from controverting his title, but the claim is that as the lessor had an interest in the premises under the original lease, although for a period of less than one year from the time of giving the lease to the defendant, and as the lease was not

silent in relation thereto a different result follows. In other words, the plaintiff is said to be in a worse condition than he would have been had he concealed the truth and had no title at all. It would seem, however, that this circumstance takes away all equity from the defense, and that in view of the mutual understanding of the real interest of the plaintiff as it existed at the time of the creation of the relation of landlord and tenant between the parties, the nature and extent of the plaintiff's legal estate is unimportant. The agreement was made with that in mind and it is impossible to find any equity in favor of defendant's claim to enjoy, without compensation, premises which he obtained from the plaintiff as landlord upon a promise to pay rent as tenant.

There are cases in which the lessee is not estopped from denying his landlord's title, as in the case of eviction by superior title, but it is well settled that if a party enters as lessee of another, and the right of the lessor is in no way altered, the lessee is estopped from denying that relation, or that the legal estate and reversion are in the lessor. The title he then acknowledges and accepts he must abide by while the relation lasts. The result is the same, although on the face of the lease it should appear that the landlord had no legal estate. If the parties agree that the relation of landlord and tenant shall be created, and this agreement is carried out by one being let into possession, then, as between them, the relation of landlord and tenant is created, and they are just as much estopped as if there had been no such statement. The foundation of the estoppel is the fact of the one obtaining possession and enjoying possession by the permission of the other. And so long as one has this enjoyment he is prevented by this rule of law from turning round and saying his landlord has no right or title to keep him in possession. (*Nellis* v. *Lathrop*, 22 Wend. 121; *Morton* v. *Woods*, L. R., 3 Q. B. 667; *S. C.* in Exchequer Chamber, 4 id. 293.)

In the case before us the state of facts upon which the possession was given and the agreement to pay rent was made, continues the same as when the lease was made, and nothing

has occurred to change the relation of the parties. The fact,. therefore, that the lease contains the truth as to the real title. of the lessor should be no objection to the plaintiff's recovery, and, so far as the cases cited by the defendant are to the con-- trary, they are inconsistent with later decisions, and the doctrine on which they rest was in fact overruled by *Jolly* v. *Arbuthnot* (4 De G. & J. 224) where the lord chancellor says : " It appears to me, however, that the circumstance. of the- truth of the case appearing upon the deed is a reason why the agreement of the parties which it embodies should be carried out, either by giving effect to their intentions in the manner which they have prescribed, or by way of estoppel, to prevent. their denying the right to do the acts which they have author-- ized to be done."

So, in *Morton* v. *Woods* (*supra*), when, by writ of error, that case was before the Exchequer Chamber, it is said : " It is. the creation of the tenancy, or the estoppel which arises from the creation of the relation of landlord and tenant by agree- ment between the parties, that makes the actual legal estate unnecessary to support the distress " (for rent) " and not the- consent of the third party in whom the legal estate is."

In the case before us the plaintiff's title rested upon the. lease and its extension. It did not rest upon either standing alone, but the demise to the defendant was upon both. They were not more valid when the defendant took his lease than when he refused to pay rent. Nothing had occurred to weaken or impair either. By accepting the lease he recognized the. title as it then existed, in substance agreed to accept it as a good title and a good foundation for the term bargained for, and he cannot now controvert one part more than the other.. His defense is not that he has been evicted or disturbed in the- possession, nor that any one but the plaintiff claims title to the demised premises - during the term, but simply that one branch or strand of the plaintiff's title has dropped off. The recital in his own lease showed that it would do so during the first year of his term. He now says, not that anything has occurred to defeat or change its character or impair its

validity, but simply that it never was valid.   In other words, that his landlord's title was good as to part of the term and bad as to another part of the term.   In effect the plaintiff said : " I have this lease and its extension ; here they are.   I will let you a portion of the term described in them."   The defendant accepted, agreed to pay the rent and was put into possession.   He was put in under one as much as the other. He now refuses to pay rent, saying to his landlord " your title is not good."   To allow such a defense to prevail would create an anomaly not called for by any precedent or rule of law or justice.   The case referred to by the court below and again cited by the respondent, is *Lamson* v. *Clarkson* (113 Mass. 348).   In that case the landlord's estate in the premises was for the life of one Lancy.   He died during the term and the court held that the landlord could not recover for subsequently accruing rent.   There the event on which the plaintiff's entire title depended occurred after the defendant took possession, and by setting it up he denied nothing which he had once admitted. He simply showed that the title under which he entered had expired.   It also appeared that the reversioner had given him notice not to pay rent to his landlord.   In the case before us it is quite different.   The defendant when he took possession admitted the plaintiff's title to be good, the whole title, the title for the extended term.   Now he proposes and has been allowed " to pick a hole " in that branch of it.   This he cannot do, since it remains as it was at the time the tenancy commenced.   By signing and sealing the deed, he accepted as good the landlord's title, not in part only, but as a whole, actually paying rent for a period beyond the expiration of the original lease of his landlord, and he cannot be heard to deny that the term bargained for · passed to him by the lease.   The rule which precludes him from contesting it has been long settled.   It is founded in good policy and in public convenience.   ( *Vernam* v. *Smith*, 15 N. Y. 327.)   There is nothing in this case to make its application inequitable.   The defendant has enjoyed what he bargained for, and there is no suggestion even that any other party makes any claim for that use.   If there were any

one he might have avoided the danger of being compelled to make a double payment by causing the parties to interplead. (*Vernam* v. *Smith, supra.*) He did not do so. The case of *Balls* v. *Westwood* (2 Camp. 11), decided in 1809, lays down the rule applicable here. In that case it was found that the defendant entered upon the premises in question (a copyhold tenement) under the plaintiff, to whom he had paid rent till within the then last two years, and that he still continued in possession. The defense was that about two years before, the copyhold tenement had been seized as freehold into the hands of the lord of the manor, and moreover that the defendant had since paid rent to him. Lord ELLENBOROUGH asked: "Did you by any formal act renounce the plaintiff's title? Did you divest yourself of the possession you obtained under the plaintiff and commence a fresh holding under another person?" The counsel for the defendant answered, "that such a form had been thought unnecessary, and contended that as the defendant did not dispute the plaintiff's original title to the premises he was at liberty to show that that title no longer existed." The court replied: "You may as well attempt to remove a mountain. You cannot controvert the continuance of the title under whose demise you continue to hold. * * * Had the defendant, upon the premises being seized by the lord of the manor, disclaimed holding of the plaintiff and entered afresh under the new landlord, we might now inquire into the validity of the seizure and consider who is legally entitled to the premises, but the same tenancy continues which was created by the original demise and the tenant must still pay rent to the lessor, whose title he then recognized." This case is cited with approval by SAVAGE, Ch. J., in *Evertson* v. *Sawyer* (2 Wend. 507), and there the defendant succeeded because he brought himself within its rule; he had disclaimed the title under which he entered, and had taken a new lease. The defendant's case is not so strong as was that of the defendant in the original case cited; there has been no eviction, no disclaimer, no acquiescence in another title, no claim by any other person

that a superior title was to be enforced or insisted upon or even that one existed. The defendant alone asserts it. He has and at all times had had all that the lease offered and upon the offer of which he accepted the benefit of its provisions. He cannot under the circumstances in evidence repudiate the contract, nor has he a right to raise an issue upon the plaintiff's title. To that effect are the cases already cited, and also *Ingraham* v. *Baldwin,* (9 N. Y. 45); *Woodruff* v. *Erie R. Co.* (93 id. 609); *Prevot* v. *Lawrence* (51 id. 222). Those cited by the respondent require no other conclusion.

Judgment was improperly given in his favor. It should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.