(17 Misc. Rep. 604)          COPELAND v. LUTTGEN.

(Supreme Court, Appellate Term, First Department. July 27, 1896.)

LANDLORD AND TENANT—ABANDONMENT AND SURRENDER BY TENANT.

A lessee who leaves demised premises, but does not surrender possession until four months later, during which time she endeavored to procure a tenant, cannot claim exemption from liability for rent on the ground that the premises had become untenantable when she left them (Laws 1860, c. 345), as the surrender must be within a reasonable time.

Appeal from Eleventh district court.

Action by Henry C. Copeland against Penelope A. Luttgen for rent. There was a judgment in favor of defendant, and plaintiff appeals. Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

C. H. Butler, for appellant.

D. T. Kimball, for respondent.

McADAM, J. The action is for rent of the suite of rooms described as the second floor of the apartment house No. 1030 Boulevard, this city, for the months of February and March, 1896. The hiring was under a written lease for one year from October 1, 1895, at $35 a month, payable monthly in advance. The defendant was allowed to take possession some time about the middle of September, 1895, and remained in possession until the 18th of October, following, when she moved away. She then put the apartments in the hands of agents for rent, and, being unsuccessful in finding a satisfactory tenant, placed her aunt, about January, 1896, in possession; telling her the apartments were unhealthy, and that she could have the use of them free of charge for the unexpired term of the lease. The aunt remained in possession until about February 7th, following, when the defendant sent a letter to the plaintiff, notifying him that she and the person she had placed in possession had been compelled to vacate the premises on account of the unhealthfulness of the same. The defense was that the premises became untenantable without any fault or neglect on the part of the tenant, whereupon she quit and surrendered possession of the same, as authorized by chapter 345 of the Laws of 1860. The act referred to is a remedial statute, in this: that it relieves the tenant from the rigorous rule of the common law, which holds him to the payment of rent notwithstanding the building rented may be destroyed or become untenantable, and permits him, in such event, to quit and surrender possession of the demised premises. It gives to the tenant the option, when the demised premises are no longer capable of beneficial enjoyment, to terminate and annul the lease, and, by a surrender of the premises, leave the parties, in respect to the future use and occupation of the same, as if no lease had ever been made. Johnson v. Oppenheim, 55 N. Y., at page 285. In the case cited the court (at page 290) said:

"The tenancy is not made absolutely to cease, except at the option of the tenant. He is relieved of his obligation, if he chooses to avail himself of the provisions of the act, or he may perform the covenants of his lease, and re-

tain the benefit of it; but he cannot have the benefit of the law, and at the same time repudiate his obligations. If he elects absolution from his obligations, the act, by necessary implication, imposes as a condition the surrender of the premises."

Where the landlord suffers acts to be done which make it necessary for the tenant to remove, they are considered, under the statute, as tantamount to a constructive eviction. Tallman v. Murphy, 120 N. Y. 345, 24 N. E. 716. And in order to make such a defense available there must be an abandonment of the premises. Boreel v. Lawton, 90 N. Y. 293; Wyckoff v. Frommer, 12 Misc. Rep. 149, 33 N. Y. Supp. 11. It is not necessary for us to decide how far the appeal should be controlled by the principles decided in Daly v. Wise (Com. Pl.) 7 N. Y. Supp. 902; Sutphin v. Seebas, 12 Daly, 139; Coulson v. Whiting, Id. 408,—and kindred cases cited by the plaintiff; for, assuming that the defendant proved that the premises were untenantable, within the meaning of the act of 1860, prior to the time she removed therefrom, in October, 1895, and that she was justified in such removal, it became her duty, if she desired to avail herself of the privilege of the statute, not only to quit, but to surrender possession of the premises to the landlord. Instead of doing this, she employed agents to find an occupant in her stead, and finally placed her aunt in possession; and the latter, as before stated, remained therein until February 7, 1896. The defendant not only did these things in affirmation of her tenancy, but paid the rent up to and including the month of January, 1896; asserting by her acts, as strongly as it was possible for her to do so, that she did not choose to exercise the option given by the statute, but elected to perform the covenants of the lease and retain the benefit of it. The case is analogous to that of a tenant defrauded in a hiring. He has a reasonable time after the discovery of the fraud within which to rescind. It is optional with him whether he will hold on or throw up the lease. If he elects the latter course, he must make his election by returning to the landlord the possession of the property, or, in default thereof, his right to repudiate the hiring is lost. Carhart v. Ryder, 11 Daly, 101; Schiffer v. Dietz, 83 N. Y. 300; La Follette v. Noble, 13 Misc. Rep. 574, 34 N. Y. Supp. 955; 8 Am. & Eng. Enc. Law, 853; Cobb v. Hatfield, 46 N. Y. 533; Masson v. Bovet, 1 Denio, 69; Lee v. Oil Co., 126 N. Y. 579, 586, 27 N. E. 1018. The defendant claims to have effectuated her surrender by leaving the keys with the janitress of the house, but the landlord immediately wrote to the defendant that the janitress had no authority to accept the keys, and that he declined to do any act or thing which would imply acceptance. The acts of dominion over the premises continued up to February 7, 1896; were voluntary on the part of the defendant, and not induced by any promise held out by the landlord; nor were they explained away by the making of continued but unsuccessful efforts to remedy the defects of which the tenant complained. The justice found for the defendant, placing his decision on the ground "that the premises were rendered uninhabitable, owing to the presence of foul and noxious smells, caused probably by defects in

plumbing, which produced illness among the members of the defendant's family." The defendant and her family removed from the premises on October 18, 1895, and the infirmity in the defense is that she did not then surrender as well as quit the premises. The finding is not based on any untenantableness existing at the time of the abandonment, in February, 1896. Indeed, the answer, which is in writing, avers that the alleged eviction occurred October 18, 1895, and the condition of the premises prior to and at that time seems to form the chief grievance of the defendant. Another significant fact is that the rent for February was payable in advance, and the abandonment seven days after it became due was no defense whatever as to that particular month. Giles v. Comstock, 4 N. Y. 270; Cole v. Sanford, 77 Hun, 198, 28 N. Y. Supp. 353; Johnson v. Barg, 8 Misc. Rep. 307, 28 N. Y. Supp. 728; Pearson v. Gillotte, 15 N. Y. St. Rep. 395; O'Brien v. Smith (Sup.) 13 N. Y. Supp. 408.

It follows that the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.